## CITY OF NORTH MIAMI BEACH, FLA., v. FEDERAL WATER & GAS CORPORATION et al.

### No. 11469.

Circuit Court of Appeals, Fifth Circuit.

Oct. 15, 1945.

---

Ernest E. Roberts, of Miami, Fla., and Julian E. Ross, of Fort Lauderdale, Fla., for petitioner.

Allen S. Hubbard, of New York City, and Forney Johnston, of Birmingham, Ala., for Federal Water & Gas Corporation.

Roger S. Foster, Sol., Securities & Exchange Commission, Harry G. Slater, Sp. Counsel, Securities and Exchange Commission, and Robert N. Hislop, Atty., Securities and Exchange Commission, all of Philadelphia, Pa., for Securities & Exchange Commission.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Claiming under Section 24(a) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79x(a) (The Act) to be aggrieved by an order of the Commission which approved Federal Water & Gas Corporation's declaration as to the sale proposed by it and granted it a Rule U-50 exception, petitioner comes here seeking to set the order aside and to obtain directions requiring competitive bidding. In connection with its petition and as a part of its effort to prevent the consummation of the proposed sale by Federal, the city applied for and obtained from one of the judges of this court an order staying the operation of the Commission's order until the further order of this court. Federal Water thereupon appeared by motion in this court to vacate the stay and affirm the Commission's order because the petition raises no substantial question for review, and the Commission joined Federal in support of this motion.

The motion set down for hearing, all parties appeared in open court and announced that the record had reached the court and that they were now prepared, with the consent of the court, to present the case on the merits. The consent was given, and the petition for review was argued and will be disposed of on its merits, without determination of the point made by Federal that a stay issued by one judge instead of by the court was both lacking in jurisdictional validity and was improvident.

Respondent, Federal Water and Gas Corporation (Federal), a registered public utility holding company, owns all of the common stock of Peoples Water & Gas Company (Peoples) which has senior securities outstanding in the hands of the public and is a subsidiary company of Federal as defined in the Act. Peoples is a gas utility company owning and operating facilities for the manufacture and distribution of gas in the city of Miami Beach and surrounding communities, including petitioner, which is a small municipality of 2000 inhabitants, and which furnishes only 800 out of the 18,000 customers of Peoples in Florida. In addition to these facilities, Peoples owns and operates water properties in the state of Oregon.

On February 10, 1943, the Commission, pursuant to Section 11(b) (1) of the Act, 15 U.S.C.A. § 79k(b) (1), directed Federal, among other things, to divest itself of its interests in the Florida and Oregon properties of Peoples.[1] At the same time, the Commission approved a general proposal by Federal looking toward the required divestment,[2] but Federal's definitive divestment program was not presented to the Commis-

---

[1] Holding Company Act Release No. 4113.

[2] Such proposal was submitted to the Commission pursuant to the provisions of Section 11(e) of the Act, which permit companies subject to the Act to submit voluntary plans for compliance with the requirements of Section 11(b).

sion until the filing of the declaration which was the subject of the Commission's order in the instant case. In such declaration, Federal, invoking Section 12(d), 15 U.S. C.A. § 79*l*(d),[3] of the Act, proposed to sell its holdings of the common stock of Peoples to R. M. Sheritt for $1,111,835 in cash. Under this section the Commission has made rules regulating such sales. One of these rules, designated as Rule U–44, prohibits the sale by any registered holding company of any security or any public utility company or any utility assets with exceptions not here relevant except pursuant to a declaration notifying the Commission of the proposed transaction and pursuant to the Commission's order with respect thereto under the applicable provisions of the Act. Another of these rules, designated as Rule U–50, with certain exceptions, requires that securities of, or owned by, any registered holding company or subsidiary company be sold at competitive bidding pursuant to the procedure therein specified. Some of the exceptions, as for instance, that the total proceeds of the sale to the issuer or vendor will not exceed $1,000,000, are self-operative. Others require specific findings by the Commission pursuant to application therefor. Federal duly applied for an exception pursuant to paragraph (a) (5) (C) of the rule on the ground that compliance with competitive bidding requirements was not

"(C) necessary or appropriate in the public interest or for the protection of investors or consumers to assure the maintenance of competitive conditions, the receipt of adequate consideration or the reasonableness of any fees or commissions to be paid with respect to sales of securities subject to section 12(d) of the Act."

After public notice of Federal's proposed private sale a public hearing was held on July 30 and 31, 1945. Petitioner was granted the right to intervene and was accorded full opportunity to be heard. It cross-examined the witnesses produced by Federal and the Commission, and produced witnesses of its own in support of its contention that the requested exception from competitive bidding should be denied. No stockholder, however, or other person financially interested in the sale appeared at the hearing to oppose the fairness of the sale price or the application for exception from competitive bidding.

Upon completion of the public hearing the Commission on August 21, 1945, heard oral argument at petitioner's request. On September 14, 1945, the Commission issued its Findings [4] and Opinion and the Order, by which petitioner claims to be aggrieved, and granting the requested exception from the competitive bidding requirements.

■ The statute authorizing review does not confer on this court any general supervision of the Commission or in any manner charge it with administering the Act. On the contrary, it provides that the findings of the Commission as to the facts if supported by substantial evidence shall be conclusive. The City, in its petition for review, does not point to, nor does it show, any respects in which the evidence fails to sustain the Commission's finding that a case for the exception was made out. It takes merely the general position that as a municipality, which with its citizens are consumers, it has some kind of absolute right to insist that the Commission refuse to recognize the exceptions to public bidding which its own rules have laid down. The Commission and Federal, on their part, insist that under the statute the question of the divestment by public holding companies of their interests in public utilities is committed by Section 12(d) of the Act to the judgment and discretion of the Commission under such rules, regulations, and orders as it may make. Pointing to the provision of the statute that the holding

---

3 "It shall be unlawful for any registered holding company, by use of the mails or any means or instrumentality of interstate commerce, or otherwise, to sell any security which it owns of any public-utility company, or any utility assets, in contravention of such rules and regulations or orders regarding the consideration to be received for such sale, maintenance of competitive conditions, fees and commissions, accounts, disclosure of interest, and similar matters as the Commission deems necessary or appropriate in the public interest or for the protection of investors or consumers or to prevent the circumvention of the provisions of this title or the rules, regulations, or orders thereunder."

4 Among them was this specific finding: "In the light of all these circumstances, we find that compliance with the competitive bidding requirements of paragraphs (b) and (c) of Rule U-50 is not necessary or appropriate in the public interest or for the protection of investors or consumers to assure the maintenance of competitive conditions, the receipt of adequate consideration, or the reasonableness of fees or commissions."

company may not sell in contravention of the rules of the Commission, its regulations and orders regarding the consideration to be received for such sale, the maintenance of competitive conditions and such similar matters as the Commission deems necessary or appropriate in the public interest or for the protection of investors or consumers, or to prevent the contravention of this title or the rules, regulations or orders thereunder, both Federal and the Commission insist that the effort of petitioner here is to have this court put itself in the position of, and exercise the jurisdiction the statute accords to, the Commission.

We agree. A careful consideration of the opinion of the Commission, in the light of the record made, leaves in no doubt that petitioner does not show itself aggrieved in any manner by the proceedings, the findings, or the order of the Commission. With the utmost consideration for petitioner's claims, Commission allowed it to intervene, extended it full opportunity to present evidence and to argue its position. In its findings,[5] it painstakingly and carefully can-

[5] "North Miami Beach is the location of the gas manufacturing plant and most of the gas storage facilities of Peoples. However, this community has a population of only approximately 2,000 persons, and less than 800 of the approximately 18,000 customers served by Peoples in Florida are located there. North Miami Beach urges, in brief, that it has not been given an adequate opportunity to compete for the acquisition of the properties of Peoples located in the State of Florida. It states that Federal has been unwilling to allow the city to make engineering examinations and other necessary inspections prior to a determination by it of an appropriate price for such properties. The city represents that it has just recently learned of the fact that Federal must dispose of its interests in the Florida properties.

The record indicates that C. T. Chenery, President of Federal, and his associates negotiated over a period of several months with some seven separate groups of persons for the sale of Federal's interests in Peoples. Representatives of the City of Miami Beach, Florida constituted one of these seven groups. A contract was in fact executed between Federal and Miami Beach, but was not consummated because of the failure of Miami Beach at popular referendum to obtain the necessary authority. It is represented that the price proposed to be paid by Sherritt, the result of some four months of arm's length negotiation, is the highest price offered Federal by any group. Federal's total expenses, including legal fees, are estimated at $2500, and no underwriting fees or commissions are involved.

In considering the competitive bidding requirements of Rule U-50 as they would apply to this case, a number of difficulties present themselves. Representatives of North Miami Beach admit that they cannot bid directly for securities and that any acquisition by that community must be an acquisition of physical properties. While it is suggested by these representatives, without detailed elaboration, that there are, or may be, individuals who are willing to bid on behalf of North Miami Beach for securities and subsequently sell the physical properties to North Miami Beach, there is no indication that this would be done. Moreover, it appears that the common stock of Peoples, even after consummation of the sale of the Mississippi properties and the improvements in its capital structure that will be made in connection therewith, would not be suitable for distribution to the general public. There remains an excessive amount of debt, and no dividends will be payable on the stock until the funded debt of Peoples is reduced to 50% of net property. Moreover, Peoples will still own gas properties in Florida and water properties in Oregon, with no operating relationship whatsoever between them. These factors would have some tendency to limit the number of potential purchasers if competitive bidding were required. Sherritt has testified that he will proceed with the sale of the Oregon properties, now being negotiated by Peoples with a public authority organized to acquire them, and has agreed to purchase the stock subject to the restriction on dividends.

If the only argument before us were the claim that the seller has already agreed to sell to a particular buyer at a price which the seller considers to be the best obtainable, we should insist upon compliance with the competitive bidding requirements of Rule U-50, since that rule is intended to insure, among other things, that the fullest competitive opportunities are afforded by sellers to prospective buyers. We have, however, given weight to the circumstances mentioned above, including the fact that the price is close to the $1,000,000 level, below which an exception from competitive bidding is automatically granted; the fact that competitive bidding would be complicated by the pending negotiations for sale of the Oregon properties and by the dividend restriction on the stock of Peoples; and the fact that the City of North Miami Beach, which claims that it has had adequate opportunity to bid, would be unable to bid on the stock, and has been unable

vassed petitioner's contentions that competitive bidding was "required in the public interest or for the protection of investors or consumers to assure the maintenance of competitive conditions", and as carefully pointed out that this was not so, and that on the contrary the public interest and that of investors and consumers alike was better served by granting Federal's application for sale without competitive bidding.

The findings of the Commission are approved. Its order is

Affirmed.

to supply any satisfactory assurance that it could finance the acquisition of the Florida properties.

In the light of all these circumstances, we find that compliance with the competitive bidding requirements of paragraphs (b) and (c) of Rule U-50 is not necessary or appropriate in the public interest or for the protection of investors or consumers to assure the maintenance of competitive conditions, the receipt of adequate consideration, or the reasonableness of fees or commissions."