## MASSACHUSETTS MUT. LIFE INS. CO. v. SECURITIES AND EXCHANGE COMMISSION et al.

### No. 13099.

Circuit Court of Appeals, Eighth Circuit.

Oct. 30, 1945.

Rehearing Denied Nov. 28, 1945.

John F. Handy, of Springfield, Mass., and Roscoe Anderson, W. R. Gilbert, and Anderson, Gilbert, Wolfort, Allen & Bierman, all of St. Louis, Mo., for appellant.

Thompson, Mitchell, Thompson & Young and Henry J. Kaltenbach, Jr., all of St. Louis, Mo., for appellee Laclede Gas Light Co.

Roger S. Foster, Sol., David K. Kadane, Sp. Counsel, Public Utilities Division and Alfred Hill, Atty., Securities and Exchange Commission, all of Philadelphia, Pa., for appellee Securities and Exchange Commission.

Before GARDNER, SANBORN, and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal by Massachusetts Mutual Life Insurance Company, a creditor of the Laclede Gas Light Company, from an order of the district court entered on December 4, 1944 (In re Laclede Gas Light Co., 57 F.Supp. 997), in proceedings for the approval and enforcement of a plan for corporate reorganization previously approved by the Securities and Exchange Commission. The plan was evolved in proceedings under § 11(e) of the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U.S.C.A. § 79a et seq., § 79k(e). The question presented is whether callable bonds, not due, of a public utility corporation, not a holding company, in reorganization under the Act may be retired without paying the redemption premiums.

The reorganization of three corporations is involved in the proceedings: The Ogden Corporation, a registered holding company, organized under the laws of Delaware; Laclede Gas Light Company, organized under the laws of Missouri and engaged in manufacturing and distributing gas and its residuals in the city of St. Louis; and Laclede Power & Light Company, a Missouri corportion, engaged in generating, transmitting and selling electric energy in the city of St. Louis. The latter two corporations are subsidiaries of the former. Following the example of the Commission and of counsel in their briefs we shall refer to the corporations as Ogden, Laclede Gas, and Laclede Electric, respectively.

On December 31, 1943, Laclede Gas had outstanding two bond issues. The first issue of 1904 consisted of $18,961,105 of 5% gold bonds due April 1, 1934, and extended at various times to April 1, 1945. The second issue in 1919 of 5½% gold bonds consisted of two series: Series C, due February 1, 1953, in the amount of $17,500,000 and series D, due February 1, 1960 in the amount of $5,500,000. Both issues were secured by liens upon the property of the corporation, and $10,000,000 of the 1904 issue were pledged as additional security for the 1919 issue. The company's aggregate outstanding bonded indebtedness was, therefore, $31,961,105, in addition to which it had outstanding $2,000,000 of 6% collateral trust notes due August 1, 1942, and extended to August 1, 1945. At the same time it had outstanding $2,333,000 of 6% preferred stock of the par value of $100 per share and $10,700,000 of common stock of the par value of $100 per share. There had been no dividends paid on any of the stock since 1933, and the arrears on the preferred stock amounted to $1,185,942, or $50.83 per share. In its statement of assets the company's property account was inflated out of proportion to costs and earnings.

On December 31, 1943, Ogden owned 73.51% of Laclede Gas' voting securities, the $2,000,000 collateral trust 6% notes outstanding, and $200 of the 1919 bonds. Ogden also owned 99.26% of the outstanding shares of Laclede Electric, its 6% demand notes for $705,000 and its open account debt of $200,000.

Another element necessary to be considered in reorganizing the corporations was the fact that Laclede Gas owned a very substantial amount of electrical equipment which it had leased to Laclede Electric in 1926 for a term expiring in 1953, and the Trustee for the 1919 bond issue claimed, and Laclede Electric denied, that the lien of the mortgage securing these bonds attached not only to the rented property but also to the betterments and additions made thereto by the lessee.

The plan of reorganization assailed by appellant originated in a consolidated proceeding involving Ogden and its numerous subsidiaries, the purpose of which was to effect compliance with the provisions of § 11(b) of the Act. In that proceeding the Commission, on May 20, 1943, entered an order requiring Ogden to take necessary action to eliminate itself as a public utility holding company, but not to divest itself of securities in Laclede Gas prior to the recapitalization of that company to the extent necessary to comply with § 11(b) (2) of the Act. The order further provided that Laclede Gas should recapitalize in

such a way as to include a substantial reduction of its indebtedness, the elimination of its preferred stock arrears, the conversion of its outstanding preferred and common stock into a single class of stock, and to take such steps as would be necessary to distribute voting power fairly and equitably among its security holders. This order was not appealed from and has become final.

Pursuant to the order of May 20, 1943, supra, Ogden, Laclede Gas, Laclede Electric and another of Ogden's subsidiaries filed applications for the approval of a plan which resulted, after the acceptance of amendments required by the Commission, in the plan approved by the court and now under consideration. This plan provided, in so far as material, that the following steps in reorganization of the corporations be taken:

1. The sale of the electric properties operated by Laclede Electric at a base price of $8,600,000, including the properties leased from Laclede Gas for which the latter corporation was to receive $2,200,000 of the sale price; and Laclede Electric was to be dissolved.

2. The recapitalization of Laclede Gas (a) by the retirement of its outstanding 1904 and 1919 bonds at principal amount and accrued interest but without redemption premiums; (b) the sale of $19,000,000 of new mortgage bonds and of $3,000,000 of serial debentures; (c) the issue of new common stock to the preferred and common stockholders in proportions determined by the Commission, 2,000,000 shares of which were to be issued to Ogden in return for (1) cancellation of the $2,000,000 collateral trust notes held by it, (2) payment to Laclede Gas of $905,000 in cash, and (3) payment to Laclede Gas of Laclede Electric's share of the cash proceeds of the sale of the electric properties estimated to be $6,175,000.

3. By the foregoing acts of Ogden and the sale of all its holdings of common stock in the Laclede Gas to the public, Ogden, as one of the steps necessary to eliminate it as a holding company, was to divest itself of all interest in Laclede Gas.

The result of the plan was to reduce Laclede Gas' indebtedness to $22,000,000 and to distribute the voting power entirely to its one class of stockholders. The Commission estimated that under the plan the future earnings of Laclede Gas would enable it to pay an annual dividend of 37 to 41.1 cents per share on its stock.

The appellant is a holder of the 1919 bonds. The appeal is from that part of the order of December 4, 1944, reading: "* * * the Amended Plan, providing that the 1919 bonds shall be fully satisfied and discharged without the payment to holders thereof of the premiums payable under the terms of the mortgage securing said bonds in the event of a redemption of the same, is approved as fair and equitable and appropriate to effectuate the provisions of Section 11 of the Act."

The mortgage securing the 1919 bonds provides that such bonds "may be redeemed by the Company at any time at par and accrued interest and such premium, if any, as the Board of Directors may determine at the time of the issuance of said bonds. If the Company shall elect to redeem any of the bonds hereunder it shall notify the Trustee * * *." Under this provision the redemption premium if payable in 1944 would aggregate $570,000.

The appellant does not challenge the findings of fact made by the Commission and approved by the court. All the objections urged relate to the authority of the Commission under the Act to order the retirement of the 1919 bonds of Laclede Gas without paying the redemption premiums provided for in the mortgage securing them.

The substantial questions presented by the appeal are: 1. Is the retirement of the 1919 bonds under the plan due to a voluntary act of Laclede Gas and accordingly controlled by the call provision of the mortgage securing such bonds, or, on the other hand, is their retirement under the circumstances compelled by § 11 of the Act? 2. Is the retirement of the 1919 bonds without paying the redemption premiums necessary to effectuate the provisions of § 11(b) (2) of the Act? 3. Is the plan fair and equitable to the persons affected thereby? And 4. Does the plan impair the contractual rights of the bondholders in violation of § 26(c) of the Act?

The appellant contends that since Laclede Gas joined in the application for approval of the plan filed to comply with the order of May 20, 1943, the retirement of the 1919 bonds is the result of its voluntary act. The Commission found that the retirement

of the bonds occurs because of the compulsion of § 11(b) of the Act [1] and that consequently the redemption premium clause of the mortgage is not applicable.

█ It is conceded, as it must be, that the retirement of the bonds issued by a holding company, with or without premium redemption provision, is within the power of the Commission in a reorganization proceeding under § 11(b) of the Act. New York Trust Co. v. Securities and Exchange Commission, 2 Cir., 131 F.2d 274, certiorari denied, 318 U.S. 786, 63 S.Ct. 981, 87 L.Ed. 1153, rehearing denied, 319 U.S. 781, 63 S.Ct. 1155, 87 L.Ed. 1725; City Nat. Bank & Trust Co. v. Securities and Exchange Commission, 7 Cir., 134 F.2d 65; In re Matter of Standard Gas & Electric Co., 3 Cir., 151 F.2d 326. Compare Otis & Co. v. Securities and Exchange Commission, 323 U.S. 624, 637, 65 S.Ct. 483. We think the reasoning in these cases is applicable to Laclede Gas, an operating utility and not a holding company.

The Commission found that compulsory retirement under the Act is due to two applicable requirements of § 11, namely (1) the necessity under § 11(b) (2) that Laclede Gas reduce its indebtedness and (2) the necessity under § 11(b) that Ogden divest itself of its entire interest in the gas and electric properties of Laclede Gas and Laclede Electric.

The findings that the indebtedness of Laclede Gas is excessive, and that the distribution of voting power among its security holders is inequitable are not controverted. The first of these conditions is obviously the cause of the second. It follows, suggests the Commission, that a substantial reduction in the indebtedness of Laclede Gas is necessary to comply with the standards of § 11(b) (2), whether the reduction be accomplished by distributing

---

[1] Sec. 11(b) "It shall be the duty of the Commission, as soon as practicable after January 1, 1938: * * *

"(2) To require by order, after notice and opportunity for hearing, that each registered holding company, and each subsidiary company thereof, shall take such steps as the Commission shall find necessary to ensure that the corporate structure or continued existence of any company in the holding-company system does not unduly or unnecessarily complicate the structure, or unfairly or inequitably distribute voting power among security holders, of such holding-company system. * * * Except for the purpose of fairly and equitably distributing voting power among the security holders of such company, nothing in this paragraph shall authorize the Commission to require any change in the corporate structure or existence of any company which is not a holding company, or of any company whose principal business is that of a public-utility company. * * *

"(e) In accordance with such rules and regulations or order as the Commission may deem necessary or appropriate in the public interest or for the protection of investors or consumers, any registered holding company or any subsidiary company of a registered holding company may, at any time after January 1, 1936, submit a plan to the Commission for the divestment of control, securities, or other assets, or for other action by such company or any subsidiary company thereof for the purpose of enabling such company or any subsidiary company thereof to comply with the provisions of subsection (b). If, after notice and opportunity for hearing, the Commission shall find such plan, as submitted or as modified, necessary to effectuate the provisions of subsection (b) and fair and equitable to the persons affected by such plan, the Commission shall make an order approving such plan; and the Commission, at the request of the company, may apply to a court, in accordance with the provisions of subsection (f) of section 18, to enforce and carry out the terms and provisions of such plan. If, upon any such application, the court, after notice and opportunity for hearing, shall approve such plan as fair and equitable and as appropriate to effectuate the provisions of section 11, the court as a court of equity may [enforce the order].

"(f) * * * In any such proceeding a reorganization plan for a registered holding company or any subsidiary company thereof shall not become effective unless such plan shall have been approved by the Commission after opportunity for hearing prior to its submission to the court. Notwithstanding any other provision of law, any such reorganization plan may be proposed in the first instance by the Commission or, subject to such rules and regulations as the Commission may deem necessary or appropriate in the public interest or for the protection of investors, by any person having a bona fide interest (as defined by the rules and regulations of the Commission) in the reorganization."

new voting stock to the 1919 bondholders or by application of cash proceeds of the sale of new stock.

There is a further reason, also, why the retirement of the 1919 bonds is necessary to enable Laclede Gas to reduce its indebtedness in conformity with § 11(b) (2). In order to obtain cash to make the required debt reduction it is necessary to sell the electric properties owned by Laclede Gas and leased to Laclede Electric. A prompt sale of these properties is not feasible without retiring the 1919 bonds at the same time because of the dispute between Laclede Electric and the Trustee under the 1919 bonds as to the extent of the bondholders' lien on the electric properties. Because of this same dispute the retirement of the bonds is necessary to enable Ogden to comply with the order to divest itself of its interests in Laclede Gas and Laclede Electric. While that dispute continues Ogden's holdings in the two corporations are not salable.

■ Since the reduction of Laclede Gas' indebtedness was the direct result of the order of the Commission of May 20, 1943, from which no appeal was taken, and of necessity in order to comply with the provisions of § 11(b) (2) of the Act, we are of the opinion that the retirement of the 1919 bonds was not due to any voluntary act on the part of the Laclede Gas but was due to the compulsion of the Act. Submission to a judgment or order of the court or to the requirements of a statute is not a voluntary action in a legal sense. Compare Dakota County v. Glidden, 113 U.S. 222, 224, 5 S.Ct. 428, 28 L.Ed. 981; Chicago Great Western Ry. Co. v. Beecher, 8 Cir., 150 F.2d 394. In a moral or patriotic sense obedience to law may often be regarded as voluntary; but in a legal sense, unless otherwise provided by statute, there is no choice. Submission is coercive. American Book Co. v. State of Kansas, 193 U.S. 49, 24 S.Ct. 394, 48 L.Ed. 613.

■ Section 11(e) provides that before approving a plan for the reorganization of a registered holding company or of any of its subsidiaries the Commission must find that such plan is "necessary to effectuate the provisions of subsection (b)." The appellant asserts that the retirement of the 1919 bonds without the payment of the redemption premiums is not necessary within the meaning of the statute for the reason that the facts show that after the consummation of the plan Laclede Gas has sufficient funds to make such payments. Clearly the argument misconstrues the standard of necessity required by subsection (b). This subsection provides only that the Commission must find the plan "necessary" to effectuate a fair and equitable distribution of voting power among the security holders. The clause relied upon is not applicable to the details of the plan. The only basis for the contention that the Act requires that the plan should provide for the payment of the redemption premiums must be found, if it exists, in the provisions of the statute discussed in the following paragraphs.

■ We pass to the important question whether the retirement of the 1919 bonds without paying the redemption premiums is repugnant to the statutory requirement that the plan must be "fair and equitable to the persons affected by such plan." § 11(e).

In Group of Institutional Investors v. Chicago, M. St. P. & P. R. Co., 318 U.S. 523, 63 S.Ct. 727, 755, 87 L.Ed. 959, the Supreme Court was called upon to construe the words "fair and equitable", as used in § 77 of the Bankruptcy Act, 11 U.S.C.A. § 205 sub. e, and applied to the reorganization of a railroad company. Mr. Justice Roberts in a dissenting opinion said: "Substantial equivalence satisfies the requirement of 'fairness and equity' in its legal sense as used in this setting." The majority opinion stated the rule in its application to bondholders as follows: "It is sufficient that each security holder in the order of his priority receives from that which is available for the satisfaction of his claim the equitable equivalent of the rights surrendered."

The Commission applied this rule in the present case, finding that "payment of principal amount and accrued interest to the effective date of the plan . . . is the fair equivalent of the rights of the 1919 bondholders and that, therefore, such payment would be fair and equitable." In arriving at this conclusion the Commission considered that the mortgage clause providing for redemption payments is not applicable. The call premiums are, therefore, neither a factor in nor a measure of a fair amount to be paid the bondholders on retirement of their bonds. In applying the rule of equitable equivalence the Commission observed that owing to the excessive

indebtedness of Laclede Gas and the imminent maturity of its first mortgage bonds there is serious danger of default on those bonds and of bankruptcy. These dangers and their consequences are averted only because of the reorganization provisions of § 11 of the Act. Further, the 1919 bonds are speculative in character. On the sale of these bonds the company received only 91.45% of the principal amount of the Series C bonds and 95% of the Series D. In 1931 series C sold as low as 62 and series D as low as 65, and in 1940 both series sold as low as 38.

■ Obviously, whether, upon retirement of outstanding bonds in the reorganization of an operating utility subsidiary, payment of principal, accrued interest, *and* redemption premiums is the equitable equivalent of the bondholders' rights depends upon the facts of each particular case. The proper measure of such equivalence is for the determination of the Commission in the first instance, and its expert skill in appraising the facts to be considered must be accorded due weight by the court.

■ Since there is a "rational basis" in fact for the finding of the Commission and no "clear-cut" error of law by either Commission or court, we are not inclined to disturb the conclusion that retirement of the bonds at principal and accrued interest amounts to the "equitable equivalent of the rights surrendered."

Appellant contends further that the plan is inequitable in that the Commission has not fairly subordinated the rights and interests of the stockholders and junior creditors to the superior rights of the bondholders. In support of this contention it is insisted that fair and equitable treatment under the plan as compared with the treatment of Ogden, owner of most of the Laclede Gas and Laclede Electric stock and a junior creditor of both corporations, would entitle the holders of the 1919 bonds to interest on their bonds until their maturity date or to reasonable compensation for reinvestment expenses.

■■ We agree that under proper circumstancees a bondholder whose bonds are redeemed before their due date should be allowed compensation for the unanticipated expense incident to the reinvestment of his funds. The due date fixed in the contract in this case can not be urged, however, as the basis for a claim for interest

payments. When the retirement of bonds is compelled by an Act of Congress in the furtherance of a legitimate public policy, contract provisions standing in the way of the consummation of that policy must yield to the public good and are illegal. See authorities cited in the discussion of the effect of § 26(c) below.

■ Comparing the sacrifices of the bondholders in this instance with the sacrifices of Ogden there appears to be no basis for the charge of unfairness. Ogden owned 22.9% of the preferred stock and 84.5% of the common stock of Laclede Gas and $2,000,000 of its 6% collateral notes. Ogden also owned 99.26% of the common stock of Laclede Electric and $905,000 of its indebtedness. Upon the sale of its assets and the dissolution of Laclede Electric Ogden was to be paid the $905,000 and was to receive 2,000,000 shares of the new stock of Laclede Gas of the par value of $4 a share which it is required to sell to the public. In return for this stock and to aid in the reduction of Laclede Gas' debts and to eliminate its interest in both subsidiaries Ogden was required to cancel the $2,000,000 of Laclede Gas' collateral trust notes, to turn over to it the $905,000 received from the proceeds of the sale of Laclede Electric and its share as a stockholder of the cash proceeds of Laclede Electric estimated at $6,175,000. If we assume that at the beginning of this proceeding both the common and the preferred stock, with its dividend arrears, of Laclede Gas held by Ogden had little or no value, still for the 2,000,000 shares of new stock of the aggregate par value of $8,000,000 it surrenders to Laclede Gas cash and 6% collateral trust notes of the aggregate value of $9,080,000. The court found that the comparative treatment of the bondholders without payment of interest to the due date of the bonds, and of the stockholders and junior creditors under the plan is fair and equitable, and this court can not say that such finding is clearly erroneous. We agree with the trial court.

Since Laclede Gas is not a holding company and the bondholders are "security-holders of such company," the appellant insists that under § 11(b) (2) of the Act, supra, the Commission is powerless to require a change in the company's corporate structure by retirement of the bonds because such change can be made for the purpose only of "fairly and equitably distributing voting power among the security-

holders." This contention is urged as an additional reason why the plan is not "fair and equitable" to the bondholders without payment of the redemption premiums.

The argument must, in order to be of any rational force, assume that the holders of the 1919 bonds may, notwithstanding the retirement of the bonds, continue to be security holders after the plan is put into operation, otherwise § 11(b) (2) is not applicable. To hold to the contrary renders the provisions of the statute inconsistent; and to hold that such bondholders may continue to be security holders renders the statute absurd. The court has approved for what seems to us to be sound reasons the finding of the Commission that the reduction of the indebtedness of Laclede Gas and consequently the retirement of the 1919 bonds are compelled by the requirements of § 11. The court has also, pursuant to the requirements of § 11(e), adjudged that the plan as a whole involving the retirement of the bonds is "appropriate to effectuate the provisions of § 11." The term "security holders," as used in § 11(b) (2), can apply, therefore, only to security holders continuing as such in the reorganized corporation. The provision of § 11(b) (2) in reference to the distribution of voting power among the security holders of a company, which is not a holding company, states a condition precedent only to the power of the Commission to order a change in the "corporate structure" of such a company. It is not relevant to the question of the fairness or equity of retiring bonds without paying the redemption premiums provided for in the mortgage securing them.

Appellant argues that conceding arguendo that retirement was necessitated by factors over which Laclede Gas had no control, still the redemption premiums must be paid because their payment is a contractual obligation and to deny payment violates § 26(c) of the Act which provides that "Nothing in this title shall be construed (1) to affect the validity of any loan or extension of credit * * * made or of any lien created prior or subsequent to the enactment of this title."

If our conclusion that the retirement of the 1919 bonds is compelled by the mandate of the statute requiring not only utility holding companies but their subsidiary utility corporations as well to be reorganized under the supervision of the Commission in such a way as fairly and equitably to distribute voting power among the security holders, then there is no merit in appellant's contention. For when the provisions of a contract are contrary to a new concept of public policy not foreseeable when the contract was made it becomes illegal and can not be enforced. New York Trust Co. v. Securities and Exchange Commission, supra; Louisville & Nashville R. R. v. Mottley, 219 U.S. 467, 31 S.Ct. 265, 55 L.Ed. 297, 34 L.R.A.,N.S., 671; Holyoke Water Power Co. v. American Writing Paper Co., 300 U.S. 324, 57 S.Ct. 485, 81 L.Ed. 678. "Contracts may create rights of property, but, when contracts deal with a subject-matter which lies within the control of the Congress, they have a congenital infirmity." Norman v. Baltimore & O. R. Co., 294 U.S. 240, 307, 308, 55 S.Ct. 407, 416, 79 L.Ed. 885, 95 A.L.R. 1352. See, also, City National Bank & Trust Co. v. Securities and Exchange Commission, supra. Section 26(c) of the Act is not, therefore, applicable.

The appellant objects to the order appealed from on the further grounds that the court failed to consider the case and to make independent findings of fact and conclusions of law, and that the retirement of the 1919 bonds without the payment of the redemption premiums violates the Fifth Amendment to the Constitution of the United States. We have considered both these contentions and find that they are without merit.

Affirmed.