## In re EASTERN MINNESOTA POWER CORPORATION et al.
### Civ. A. No. 844.

District Court, D. Minnesota, Fifth Division.

Nov. 8, 1947.

---

[3] Emphasis supplied.

Roger S. Foster, Securities & Exchange Commission, of Philadelphia, Simpson, Thacher & Bartlett and Marshall A. Jacobs, all of New York City, for Eastern Minnesota Power Corporation and Wisconsin Hydro Electric Co.

Harold LeVander, of South St. Paul, Minn., for Rural Power Cooperative Ass'n, Anoka County Cooperative Light & Power Ass'n, East Central Electric Cooperative, and Minnesota Valley Electric Cooperative.

Root, Ballantine, Harlan, Bushby & Palmer and Philip E. Gregg, all of New York City, for Commercial Nat. Bank & Trust Co. and Arthur Muller, trustees of first mortgage bonds of Eastern Minnesota Power Corporation.

Burry, Ryan & Paulson, T. J. Ryan and L. M. Paulson, all of Milaca, Minn., for nine objecting villages.

S. Bernhard Wennerberg, of Center City, Minn., for power customers of Center City, Minn.

George E. Sausen, of Pine City, Minn. for North Pine Electric Cooperative, Finlayson, Minn.

DONOVAN, District Judge.

The Securities and Exchange Commission seeks enforcement of a plan pursuant to Sections 11(e) and 18(f) of the Public Utility Holding Company Act of 1935, 49 Stat. 803, 15 U.S.C.A. § 79a et seq. This proceeding was commenced by the Commission at the request of Eastern Minnesota Power Corporation, a Minnesota corporation, hereinafter referred to as Minnesota. The plan was originally submitted to the Commission on March 31, 1942, by Minnesota, and Wisconsin Hydro Electric Company, a Wisconsin corporation, hereinafter referred to as Wisconsin. Said plan was amended on May 1, 1943, proposing a recapitalization of Minnesota and Wisconsin. Pursuant to Notice and Order of the Commission, issued from time to time, hearings were held.

On November 1, 1945, Minnesota and Wisconsin petitioned for leave to withdraw the plan previously under consideration and to file a joint plan as of said last date, whereby it was proposed, among other things, to sell the physical assets of Minnesota and to apply the proceeds to the payment of Minnesota's outstanding mortgage bonds. Pursuant to said last petition the Commission, on May 17, 1946, issued its Notice and Order relative to said joint plan, granting withdrawal of the original plan and reconvening the hearings. Further amendments to the plan were made from time to time, up to and including April 9, 1947.

The "Amended Plan" finally considered by the Commission provided, among other things, that:

(a) The physical assets of Minnesota will be sold to certain electric cooperative associations in the State of Minnesota for a basic price of $1,530,000, subject to certain adjustments.

(b) From the proceeds of such sale the rights and claims of the holders of the First Mortgage 5-½% Gold Bonds of Minnesota will be discharged by payment in cash. Such payment shall include principal and accrued interest to the effective date of the Amended Plan, but shall not include a redemption premium.

(c) Wisconsin will revise its stock capitalization by substituting 132,800 shares of $12 par value common stock in substitution for its presently outstanding preferred and common stocks. Of said 132,800 shares of new common stock, 119,520 shares, or 90%, will be distributed to the holders of the presently outstanding preferred stock in full satisfaction of their existing rights and claims, and Minnesota as the holder of all of the presently outstanding common stock of Wisconsin will receive the remaining 13,280 shares, or 10%, of said new common stock.

(d) Minnesota, after the exchange referred to above, and the sale of its assets, the discharge of its bonded indebtedness and the payment of other creditors, will distribute its remaining assets, consisting of cash and the 13,280 shares of common stock of Wisconsin, to its preferred stockholders on a pro rata basis.

On April 30, 1947, the Commission issued its Notice and Order, reconvening hearings with reference to the Amended Plan as modified to date. A thorough presentation of all matters involved was had at said hearings, following which, on May 26, 1947, the Commission entered its Findings, Opinion and Order to the effect that the Amended Plan was appropriate to effectuate the provisions of Section 11(b) of the Act, and fair and equitable to the persons affected thereby, and approving said Amended Plan and the sale of Minnesota's physical assets to nine Minnesota cooperatives.

On June 10, 1947, on motion of the Commission, this Court issued an order setting July 15, 1947, at Duluth, Minnesota, as the time and place for hearing the Commission's application to the Court for enforcement of said Amended Plan as approved by said Commission, and for the filing of a written statement of objections by all interested objectors, and further enjoining and restraining any interference with the instant case before the Commission and this Court pending disposition of the application here under consideration.

Statements of Objections were duly filed by certain villages and consumers which may be summarized by saying that the villages would not consent to the assignment of franchises to any cooperative, particularly for the reasons: (1) The sale of the physical assets of Eastern Minnesota, as proposed by the Amended Plan, is contrary to and in violation of law; (2) In granting franchises to Eastern Minnesota said villages did not intend or contemplate the assignment of said franchises to a cooperative; (3) Ownership of the electric properties by cooperatives, as proposed by the Amended Plan, would prevent or hinder future acquisition and operation by the municipalities, or a public utility, of the properties or systems located within such municipalities; (4) The cooperatives are lacking in capacity to furnish adequate and dependable service to the municipalities and inhabitants thereof; (5) There is no showing that the cooperatives would or could supply service at reasonable rates; and (6) The Opinion, Findings of Fact, and Order of the Commission, purporting to be made pursuant to Section 11(e) does not comply with the terms and provisions of said section.

The principal objections of the consumers were: (1) The cooperatives do not have facilities for furnishing an adequate and dependable supply of energy for the present and future power requirements of the power customers; and (2) There is no showing that the cooperatives would or could supply service at reasonable rates.

The Court has had the benefit of scholarly arguments and briefs by able counsel following the hearing of July 15, 1947, and again on November 7, 1947. The record

and transcript of proceedings before the Commission was introduced in evidence at the hearing before the Court.

The sole question for determination by the Court is whether the Amended Plan is "fair and equitable and * * * appropriate to effectuate the provisions of section 11" of said Act.

The objections are based on apprehension and fear that the purchasing cooperatives will not be able to carry out the plan approved by the Commission as well as some successful and established public utility company. The points made by the objectors as above enumerated do not furnish a sufficient basis for interference by this Court with the Findings and Order of the Commission.

The Court is not unmindful of the general criticism of cooperatives based on the theory that their alleged tax-free profits and ability to obtain loans such as in the case at bar provide the necessary funds for the sort of expansion permitted by the 'Commission's approval of the plan we are here concerned with. But with such criticism the Court cannot concern itself. The personal opinions of individuals and the ideologies of persons or groups opposing cooperative enterprises as such do not enter into the problem here presented. The power of the Court is too limited and circumscribed to set aside the Findings and Order of the Commission on the record here controlling. The Court cannot exercise any general supervision of the Commission, nor can it direct the administrating of the Act. City of North Miami Beach, Fla., v. Federal Water & Gas Corporation et al., 5 Cir., 151 F.2d 420.

That a contrary conclusion may have been reached by the Court if the Act permitted a hearing de novo is of no avail to objectors. Nor is the wisdom of the conclusion reached by the Commission of any concern of the Court. Board of Trade v. United States, 314 U.S. 534, 62 S.Ct. 366, 86 L.Ed. 432. The duty of the Court ends if the record submitted in the present case is convincing that it supports the findings of the Commission by substantial evidence, consistent with the authority granted by Congress. National Broadcasting Co., Inc., v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344. The record of the instant case, in my opinion, will not permit a finding that the Amended Plan was not fair and equitable. Massachusetts etc. Co. v. Securities Exchange Commission, 8 Cir., 151 F.2d 424.

As emphasized by the United States Supreme Court in Securities and Exchange Commission v. Chenery Corporation et al., 332 U.S. 194, 67 S.Ct. 1575, 1577, 1760, it is a:

"fundamental rule of administrative law * * * that a reviewing court, in dealing with a determination * * * which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm [or reverse] the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency".

It has been suggested, in view of a change of front by Minnesota, who has indicated a wish to cancel the controlling contract, that the Court should remand the matter to the Commission for a further hearing. In answer to that suffice to say that upon being advised of Minnesota's wish in that respect the Commission initiated the motion here being considered. I can see no plausible reason to remand under the circumstances. It would merely cause more delay, and perhaps add to the anguish that actuated Minnesota to submit the Amended Plan to the Commission. Nor can I agree that remanding would be helpful to the Indenture Trustees. The status quo can be maintained to the extent of permitting any appeal contemplated by appropriate order of the court having jurisdiction.

The order made herein may be understood as constituting the findings, conclusions and order of the Court.

All parties aggrieved may have an exception.