## BAILEY et al. v. MINSCH et al.
### No. 4348.

Circuit Court of Appeals, First Circuit.

June 24, 1948.

Milton S. Gould, of New York City (Samuel H. Kaufman, of New York City, and Henry M. Leen, of Boston, Mass., on the brief), for appellants.

Robert H. Davison, of Boston, Mass. (Lewis L. Wadsworth, Jr., and Haussermann, Davison & Shattuck, all of Boston,

636

Mass., on the brief), for William J. Minsch et al., appellees.

Charles C. Cabot, of Boston, Mass. (Ropes, Gray, Best, Coolidge & Rugg, Oscar M. Shaw, and W. Covington Hardee, all of Boston, Mass., on the brief), for Railway & Light Securities Company et al., appellees.

Joseph V. Carroll and Dana J. Kelly, both of Boston, Mass., for Philip J. Godfrey, intervenor.

Before DOBIE, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

For the fifth time we are confronted with problems arising out of the affairs of the Aldred Investment Trust. The trust, which was organized in 1927 as a Massachusetts trust, was registered with the Securities and Exchange Commission·as a closed end, non-diversified, management investment company. From 1937 the trust's assets were less than its outstanding debentures and its earnings did not equal its interest requirements. In 1944 the trust had outstanding $5,900,000 face amount of 4-½% debentures maturing in 1967. To each $1000 debenture ten shares of non par common stock were attached. In addition there were 112,500 free common shares outstanding. In 1944 the Securities and Exchange Commission and a debenture holder brought actions for appointment of a receiver, liquidation of the trust, and an injunction against the management, which consisted of the holder of most of the free stock and his nominees. The management was found guilty of gross abuse of trust within the meaning of the Investment Company Act of 1940, 54 Stat. 841, 15 U.S.C.A. § 80a–35, and enjoined from further acting for the trust. Receivers were appointed to reorganize or liquidate the trust. Securities & Exchange Commission v. Aldred Investment Trust, D. C. Mass., 1945, 58 F. Supp. 724, affirmed Cir., 1945, 151 F.2d 254, certiorari denied, 1946, 326 U.S. 795, 66 S.Ct. 486, 90 L.Ed. 483. Subsequent to the affirmance by this court, the present appellants purchased 110,000 of the free shares and a small portion of the debentures. They were allowed to intervene in the receivership proceedings and sought a termination of the receivership and a continuation of the trust. The trust became solvent in 1945 as a result of appreciation in value of certain of the securities in the trust portfolio. The appellants filed plans of reorganization, and other plans were submitted by debenture holders. On June 19, 1946 the district court denied the appellant's prayer for termination of the receivership, disapproved all the reorganization plans, and ordered the receivers to liquidate the trust. That order was affirmed by this court. Bailey v. Proctor, 1 Cir., 1947, 160 F.2d 78 and certiorari denied by the Supreme Court, 1947, 331 U.S. 834, 67 S.Ct. 1515, 91 L.Ed. 1847.

On June 19, 1947 the district court granted a motion of the debenture holders' committee for payment of the debentures at face amount plus accrued interest. In lieu of the 59,000 common shares which were attached to the debentures the former debenture holders were to receive 59,000 unattached common shares. This order has been carried out and the debentures with perhaps minor exceptions have been turned in. The court, however, denied the debenture holders' motion for allowance of a 5% premium. The debenture holders had sought this premium in reliance upon Section 10 of the debenture agreement which states that "the debentures * * * are subject to redemption at the option of Aldred Investment Trust on any interest payment date prior to Maturity * * * at the principal amount thereof and accrued interest thereon * * * together with a premium of 7% of the principal amount thereof less 1% for each full five year period elapsed since December 2, 1932."

On October 20, 1947, the appellants, the majority stockholders, presented a motion in the district court for an order "supplementing" the judgment of the district court entered on June 19, 1946, ordering the receivers to liquidate the trust. The motion requested that upon completion by the receiver of the payment of all debenture holders the receivership be terminated, management and control be restored to the trust, and shareholders who desired to retain their stock rather than obtain the liquidation value thereof be allowed to continue the trust and elect trustees to manage and

operate it. Stockholders who wished to withdraw would be allowed to do so and would receive their pro rata share of the assets. The appellants stated that upon acquiring control of the trust they would bring it into conformity with certain provisions of the Investment Company Act of 1940, with which it was not compelled to conform since it was established before 1940. Neither the Securities and Exchange Commission nor the debenture holders' committee objected to this plan. The district court, however, denied the motion but this court held that it should have been allowed. Bailey v. Proctor, 1 Cir., 1948, 166 F.2d 392. The question of whether the bondholders would under the changed circumstances be entitled to the premium was left open, since it had not been previously raised or argued. The debenture holders' committee then petitioned the district court for allowance of the premium. The district court vacated its prior order refusing the premium, and granted the debenture holders' motion that they be paid a 5% premium. 76 F.Supp. 614. This appeal followed.

■ There is some disagreement between the parties as to the exact nature of the proceedings. The receivers were appointed under the broad equity powers of the court, and are still administering the trust under these powers. When the bonds were paid the district court was beginning to liquidate the trust in accord with its earlier order and our affirmance, but our latest decision in effect modified that order. Whether what is occurring now be called a partial liquidation or a reorganization makes little difference. Whatever it be called, the result must be a fair and equitable one, or it can not be allowed. But it does not follow from this, as the bondholders argue, that the scope of our review is limited to whether the district court abused its discretion. What is fair and equitable is a question of law. The words fair and equitable have come to be words of art with a fixed meaning. Case v. Los Angeles Lumber Products Co., 1939, 308 U.S. 106, 115, 116, 60 S.Ct. 1, 84 L.Ed. 110; see Dodd, the Los Angeles Company Case, 53 Harv. L. Rev. 713 (1940). The rationale of fair and equitable is recognition of con-

tractual rights. New York Trust Co. v. Securities and Exchange Commission, 2 Cir., 1942, 131 F.2d 274, certiorari denied, 1943, 318 U.S. 786, 63 S.Ct. 981, 87 L.Ed. 1153; Federal Water Service Corp., 8 S.E. C. 893 (1941). It has been said at times that the fairness of a plan is a question for the discretion of the district court, and of course in many circumstances this is true. In determining the fairness of reorganization plans, it is usually necessary to determine the earning power of the enterprise and to value the enterprise. There is also the necessity of determining whether new securities are the equitable equivalent of old securities. Of course in such matters, which are largely factual, the informed judgment of the district court is not lightly set aside. But in this case no such under-lying factual questions are involved. There is no problem of evaluating the enterprise to determine which security holders should participate. There are no new securities being issued to senior claimants which must be valued. Nor did the district court's granting of the motion to allow premiums rest on any finding of the value of the old debentures, or on any finding that it was necessary to award the premium to give the equitable equivalent of the old debentures.

■ Our inquiry then must be directed to whether the premium is payable by the terms of the contract. The indenture provides for redemption at the option of the trust. Can it be said that the bonds were redeemed at the option of the trust? The bonds were paid as a result of a court order secured at the behest of the bondholders' committee. Payment was made against the express desire of the controlling shareholders who repeatedly sought to have the trust released from receivership with its capital structure intact. The bondholders and Securities Exchange Commission early took the position that the bondholders should not be compelled to leave their funds in the trust to be controlled by the stockholders. See our opinion in Bailey v. Proctor, 1 Cir., 160 F.2d 78. Thus not only did the bondholders not object to payment, but it was at their insistence that the bonds were paid. The usual purpose of clauses allowing call of bonds before maturity date

on payment of a premium is to allow the enterprise to take advantage of favorable conditions in order to retire an indebtedness or to refinance it at a lower cost. Since the bondholder is being deprived of his investment and may not be able to secure as favorable a one, a premium is provided to compensate him. None of these conditions was present here. Payment was against the desire of the trust; it was not made in order to take advantage of favorable conditions; payment was at the request of the bondholders and they were not deprived of a favorable investment. We think that the redemption of the bonds was not within either the letter or the spirit of the indenture language.

Nor does the fact that the original order has been modified, so that the trust will not be completely liquidated but instead will continue, make the payment of the bonds a call at the option of the trust. The trust in effect was given an option of either liquidating or continuing without the bonds. The fact that the majority stockholders decided to continue instead of to dissolve does not make the redemption of the bonds voluntary. In either event the bonds would be completely paid off as a result of judicial compulsion.

We find persuasive support for our position in cases arising under the Public Utility Holding Company Act, 15 U. S.C.A. § 79 et seq., in which bonds were prematurely retired in simplification proceedings. E. g., Massachusetts Mutual Life Ins. Co. v. Securities and Exchange Commission, 8 Cir., 1945, 151 F.2d 424, certiorari denied, 1946, 327 U.S. 795, 66 S.Ct. 817, 90 L.Ed. 1022; In re Standard Gas & Electric Co., 3 Cir., 1945, 151 F.2d 326, cert. denied, 1946, 327 U.S. 796, 66 S.Ct. 820, 90 L.Ed. 1022; City National Bank & Trust Co. v. Securities and Exchange Commission, 7 Cir., 1943, 134 F.2d 65. In some of these cases the plans were formulated by the Securities and Exchange Commission. In others the plans were formulated by the companies themselves. In some of the cases the corporations whose bonds were being retired were to continue in existence; in others the corporations were to be dissolved. Yet in almost all of these cases it was held that the bond re-

tirements were involuntary since the holding company structures were being simplified in pursuance of congressional policy. Some of these cases did point out that in some situations the Commission might find the equitable equivalent of the bonds to be more than the face amount. See, e.g., Massachusetts Mutual Life Ins. Co. v. Securities and Exchange Commission, supra, 151 F.2d at page 430; In re Consolidated Electric & Gas Co., D. C. Del., 1944, 55 F. Supp. 211, 216; In re North Continent Utilities Corporation, D. C. Del, 1944, 54 F.Supp. 527, 530. But in the present case there has been no such finding, so the dicta in these cases is not pertinent.

The bondholders argue that the Public Utility Holding Company cases are of no relevance here since in those cases redemption was occasioned by a federal statute. But in this case, although no statute by its terms compels a change in the capital structure, the redemption of the bonds is necessary to make the trust conform to the congressional policy laid down in the Investment Company Act of 1940. The trust would not have been allowed to continue if the capital structure had not been modified to conform to that statute's requirements for investment companies organized after its passage. Also in most of the Public Utility Holding Company cases there were several alternatives available by which the congressional policy could have been carried out. Redemption of the bonds was not absolutely necessary; yet, it was held that if that method of simplification was used, even if at the desire of the company, redemption was not voluntary. Similarly here, although there was a choice between dissolving and continuing, the fact that the stockholders elected to continue does not make the redemption a voluntary one. We think that as far as the Public Utility Holding Company cases rest upon interpretation of the bond contract, they are relevant here.

Nor can the bondholders find any support in other situations that might possibly be considered analagous. In case of default and acceleration of the maturity date, the premium would not be due. If the trust had been reorganized under Chapter X of the Bankruptcy Act, 11 . U.S.C.A. § 501

et seq., there is nothing to indicate that the premiums would have to be paid.

We therefore conclude that the premium is not due under the circumstances of this case, regardless of whether the trust is to be completely liquidated or only partially liquidated.

The order of the district court is reversed.