**BAILEY et al. v. PROCTOR et al.**
**No. 4185.**

Circuit Court of Appeals, First Circuit.
Feb. 24, 1947.
Writ of Certiorari Denied June 2, 1947.
See 67 S.Ct. 1515.

Roger S. Foster, of Philadelphia, Pa. (Sidney H. Willner and Arnold R. Ginsburg, both of Philadelphia, Pa., on the brief), for S. E. C., appellee.

Edward O. Proctor, of Boston, Mass., for Edward O. Proctor et al., receivers, appellees.

Robert H. Davison, of Boston, Mass. (Lewis L. Wadsworth Jr., of Boston, Mass., on the brief; Haussermann, Davison & Shattuck, of Boston, Mass., of counsel), for Minsch et al., appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This case presents a sequel to our prior decision in Aldred Investment Trust v. Securities and Exchange Commission, 1 Cir., 1945, 151 F.2d 254, certiorari denied, 1946, 326 U.S. 795, 66 S.Ct. 486, in which we affirmed the lower court's judgment reported in D.C., 1945, 58 F.Supp. 724. In that earlier case the trustees and officers were found guilty of "gross abuse of trust" within the meaning of Section 36 of the Investment Company Act of 1940, 15 U.S.C.A. § 80a—35, and were enjoined from acting or serving in the capacity of trustees or officers. A receiver was "appointed with power either to reorganize the capital structure of the Trust or liquidate the Trust and distribute the assets".[1] Appellants, who were subsequently permitted to intervene in the receivership proceedings below, now appeal from an order of the district court (1) denying their prayers for an order directing the calling of a special meeting of the shareholders of the Trust and the termination of the receivership, (2) disapproving four plans of reorganization of the Aldred Investment Trust, and (3) directing the receivers to proceed to liquidate the Trust.

Inasmuch as events occurring prior to our last opinion are necessary to a complete understanding of the issues herein involved, reference is made to the reports of our opinion and that of the district

Milton S. Gould and Samuel H. Kaufman, both of New York City (Henry M. Leen, of Boston, Mass., on the brief), for appellants.

---

[1] The quoted language is from the district court's conclusions of law. However the ensuing decree, though appointing receivers with power to operate the business, contained no directions as to reorganization or liquidation.

court. Only a brief sketch of those facts will be presented here.

The Aldred Investment Trust was organized in 1927 as a Massachusetts Trust. It was registered with the Securities and Exchange Commission pursuant to Section 8 of the Investment Company Act of 1940, 15 U.S.C.A. § 80a—8, as a closed-end, non-diversified management investment company. Prior to the previous proceedings the Trust had outstanding and still so has $5,900,000 amount of 4½% debentures, maturing in 1967; to each debenture is attached ten shares of no-par common stock for each $1000 in principal amount of the debenture so that there are 59,000 non-detachable common shares. In addition, Aldred has outstanding 112,500 "free" common shares not attached to debentures. From 1937 until some time subsequent to the earlier proceedings the Trust was insolvent in that the market value of the trust assets was substantially less than the principal amount of the debentures. From 1940 through 1943 earnings of the Trust were substantially insufficient to meet interest requirements on the debentures. In 1941 Gordon B. Hanlon acquired control of the Trust through purchase of 110,000 shares of the free stock and he exercised such control by making himself and his nominees officers and trustees. Early in 1944 Hanlon negotiated the purchase of the majority of the voting stock of Eastern Racing Association which operated the Suffolk Downs horse racing track. Later in 1944 actions were brought by Charles F. Stratton, a debenture holder, and the Securities and Exchange Commission, which resulted in the removal of Hanlon and his nominees as officers and trustees for "gross abuse of trust" and the appointment of receivers to reorganize or liquidate the Trust. The district court found also that the trust estate was then heavily insolvent.

On January 15, 1946, after this court had affirmed the judgment of the district court and while the petition for certiorari was pending in the Supreme Court, these appellants purchased from Hanlon his controlling 110,000 free shares and also acquired some $79,000 of debentures with common stock attached. The appellants, on February 19, 1946, filed a motion for leave to intervene which was then allowed ex parte to the extent of opposing a petition filed by the receivers for leave to sell the Eastern Racing Association stock, and, subsequently on March 20, 1946, was allowed in full. The proposed pleading attached to the intervention petition alleged that they, holders of over 25% of all the stock, had requested the new trustees, who had been appointed by Hanlon, and the receivers to call a special meeting of the shareholders as provided in §§ 2 and 8 of the trust agreement. The purported trustees not having a list of the shareholders were unable, and the receivers had refused, to call such special meeting. They further alleged that the Trust was now solvent inasmuch as the portfolio securities had appreciated in value and the Eastern Racing Association stock was now worth far more than the price at which it had been purchased. They, therefore, prayed for an order (1) directing the receivers to call a special meeting of the shareholders of the Trust so that qualified and representative trustees could be elected; and (2) terminating the receivership because of current solvency and because of the inability of Hanlon or his associates to further control the Trust.

The district court, on March 13, 1946, allowed the receivers' petition for leave to sell at public sale the Eastern Racing Association stock despite intervenors' objecting that a better time and method of sale were possible so that a more advantageous amount would be realized. Meanwhile, the market value of the Racing stock seems to have been enhanced almost daily so that eventually, on May 1, 1946, a sale was consummated at a much higher figure than the receivers had first anticipated, and the appellants have not appealed from the order confirming such sale.

On March 28, 1946, the appellants again moved for an order directing the receivers to call a special meeting of the shareholders of the Trust. It appears that one of the primary purposes of holding such a meeting was to elect new trustees who would attempt to reorganize the Trust. Prior to the court's action on this motion, appellants filed on April 24, 1946 a petition for reorganization of the Trust and

termination of the receivership. In this petition it was demonstrated that the Trust was now solvent due primarily to the increase in market value of the Eastern Racing Association stock. Appellants conceded that prior to termination of the receivership, the Trust should be reorganized to prevent a recurrence of the events which led up to the receivership, and consequently, a plan of reorganization was proposed. As part of such plan of reorganization, appellants proposed a stay in the sale of the Eastern Racing Association stock so that a recapitalization of that company might be brought about and consequent enhancement of the value of its stock. This recapitalization scheme and deferment of the sale had been considered by the court in its order permitting the receivers to sell those assets. On May 8, 1946, the Securities and Exchange Commission answered appellants' petition and prayed that the requested relief be denied, stating that the only effective and equitable means of protecting the interests of the debenture holders was prompt liquidation. A hearing was had on the same day and since the sale of the Eastern Racing Association stock had rendered moot appellants' grounds for reorganization of the track, the court denied that petition without prejudice and reserved decision on appellants' motion calling for a special meeting of the shareholders.

The appellants on June 5, 1946 filed another plan of reorganization. Three other plans of reorganization were submitted to the court by various intervenors representing some of the debenture holders. On June 10, 1946, a hearing was had on the several plans for reorganization and liquidation. The Securities and Exchange Commission opposed all proposed plans and urged liquidation of the Trust. Moreover each proponent objected to all other proposed plans. The court by memorandum issued the same day stated that none of the proposed plans was fair and feasible and ordered the receivers to liquidate the Trust. Appellants' motion for an order directing the calling of a shareholders' meeting was denied inasmuch as there was no court approved plan for the shareholders to discuss, and in view of the imminent liquidation an election of trustees was unnecessary and inadvisable. On June 19, 1946, the order appealed from was entered. Appellants urged that the court lacked jurisdiction to order liquidation since the Trust was now solvent and rid of the corrupt management which had necessitated the appointment of receivers, or that, if the court had jurisdiction and power so to order, it had improperly exercised such power. The appellants likewise protest the refusal of the court to order a shareholders' meeting and the rejection by the court of the plans of reorganization without a submittal of them to the security holders.

Appellants' first argument is that the district court lacked jurisdiction to liquidate the Trust. In our view the jurisdiction of the district court to act in terminating the receivership by ordering liquidation is dependent upon the jurisdiction existing at the time the receivership was commenced. At that time the Trust was insolvent and the officers-trustees were guilty of "gross abuse of trust". We then upheld the district court's decree appointing receivers, as being within the court's general equity powers. Admittedly, however, at the time of that appeal the emphasis was on the power to appoint a receiver rather than the power to order liquidation as the end of the receivership.[2] Therefore, rather than resting our present decision on the narrower ground of the "law of the case", we now hold that a court of equity has inherent power to appoint a receiver to liquidate a corporation or investment trust where fraud, mismanagement or abuse of trust is present whether or not insolvency is likewise present. Tower Hill-Connellsville Coke Co. of West Virginia v. Piedmont Coal Co., 4 Cir., 1933, 64 F.2d 817, 825-827, 91 A.L.R. 648, certiorari denied, 1933, 290 U.S. 675, 54 S.Ct. 93, 78 L.Ed. 582; see Dallasega v. Victoria Amusement Enterprises Inc., D.C.M.D.Pa., 1942, 43 F.Supp. 697; Securities and Exchange Commission v. Fiscal Fund, Inc., D. C.Del., 1943, 48 F.Supp. 712, 715; 16 Fletcher, Cyclopedia of Corporations (1942) §

---

[2] See footnote 1, supra.

8082; Hornstein, A Remedy for Corporation Abuse—Judicial Power to Wind Up a Corporation at the Suit of a Minority Stockholder, (1940) 40 Columbia Law Review 220. As Hornstein points out, this power was not always so recognized but the present weight of authority now accepts this doctrine. By placing our decision upon the ground of general equity jurisdiction, we eliminate the argument hinged on statutory construction of the Investment Company Act of 1940. Nor do we think that it was intended that the district court be deprived of this aspect of its general equity jurisdiction by failing to refer specifically to it in that statute. Consequently, power did reside in the district court to appoint a receiver to reorganize or liquidate the Aldred Trust.

 The question now presented to us is whether or not the district court has lost that power by reason of intervening solvency and the removal of the officers-trustees guilty of abuse of trust and the impossibility of their now resuming such control of the Trust due to the transfer of the controlling shares to the present appellants. In the first place we do not believe that the perhaps temporary solvency of the Trust would necessarily affect the power of the court supervising the receivership. Other grounds for the appointment of a receiver having been present, the court's jurisdiction is not defeated by the supervening solvency. See Maxwell v. Enterprise Wall Paper Co., 3 Cir., 1942, 131 F.2d 400, 404; Orth v. Transit Investment Corp., 3 Cir., 1942, 132 F.2d 938, 945. Since a receivership may be inaugurated for a solvent corporation, solvency, especially where it may be of a transient nature, does not terminate jurisdiction to continue a receivership created on grounds other than insolvency. Moreover, we believe that the jurisdiction existing at the time of creation of the receivership is a continuing jurisdiction and the questions of present solvency and removal from control of the offending officers and trustees pertain not to jurisdiction but to the propriety of the exercise of such jurisdiction. Once having properly assumed jurisdiction of a corporation or trust by appointing receivers under its general equity power, a court should not terminate its supervision until or unless it becomes satisfied that equity has been done to those whose interests the court had originally been asked to protect. See 2 Smith, Receivers (2 ed. Tardy 1920) § 792. The court upon examination of the plans for reorganization found that none was fair and feasible, and consequently, accepted liquidation as the only other alternative. The question before us is whether we can say that the court below abused its discretion in failing to order termination of the receivership by vesting control in the present common shareholders with the terms of the trust and the capital structure unchanged.

In considering the propriety of the order decreeing liquidation it must be remembered that reorganization of this Trust was considered, at least by the Securities and Exchange Commission, and undoubtedly by the court, a necessary prelude to any termination of the receivership other than by liquidation. Appellants at least recognized the advisability of a reorganization in their final petition before the district court.

 Ordinarily, it is said that liquidation being a drastic remedy will only be decreed in an extraordinary case or where special and peculiar circumstances exist. See Maxwell v. Enterprise Wall Paper Mfg. Co., supra, 131 F.2d 400 at page 403; Hornstein, supra, at page 236; cf. Lewis v. Commonwealth Securities Inc., D.C. Del., 1943, 51 F.Supp. 33. Unfortunately the district court did not furnish us with an opinion in which it indicated the grounds for the exercise of its discretion. However, from the record we are able to garner facts which seem to us to support the manner in which such discretion was exercised.

Since 1937 the Aldred Trust assets have had a value substantially less than the principal amount of outstanding debentures. During the years 1940 to 1943 the earnings of the Trust were substantially insufficient to meet the interest charges on these debentures. Only as the result of the successful outcome of a highly speculative venture undertaken by Hanlon has the Trust been able to get its head out of

water during the receivership. Temporary solvency was brought about by the sale of the Eastern Racing Association stock at a tremendous profit. Due to a post-war stock market inflation the other portfolio assets nearly doubled in value but were still less than the face amount of the outstanding debentures. The vagaries of the stock market are familiar to all of us. There seems to be doubt also as to the ability in the future of any portfolio to earn these interest requirements except by resort to speculative securities with the hope of capital appreciation.

The Securities and Exchange Commission indicated that the Aldred Trust security structure embodied the evils which led to the enactment of the Investment Company Act of 1940. The "free stock", representing only a small investment and often no equity, controlled the operations, policies and management of the almost $6,000,000 investment of the debenture holders. The inability to earn interest requirements induces the controlling shareholders to engage in capital appreciation investments or in speculative ventures to insure them a profit in one way or another, e. g., Hanlon's activities in the Eastern Racing Association stock. The present holders of the free stock, the appellants here, purchased control of Aldred, which has $5,900,000 principal amount of debentures, for $150,000. Their equity at present shows an appreciation of some $2,500,000 as a result of general market increases and the favorable sale of Eastern Racing Association stock.

The important question is not the personal honesty, integrity or ability of appellants or their proposed management, but rather the lack of balance and equality of control in the capital structure of the Trust. Specifically, the court could not feel assured that a recurrence of the events leading up to the present receivership was impossible. Insolvency was likely; lack of sufficient earnings to cover interest requirements was possible. In such event, nothing would prevent the controlling shareholders, either appellants or their successors, from embarking on new speculation to the detriment of the debenture holders. See Tow-er Hill-Connellsville Coke Co. of West Virginia v. Piedmont Coal Co., supra, 64 F. 2d at page 822, 91 A.L.R. 648. The court properly felt that the debenture holders were entitled now to the cash salvaged from what had appeared to be a doomed enterprise.

Finally, it was indicated at the argument before us that one of appellants' primary motives for the continuation of Aldred was to preserve its security structure, inasmuch as a similar trust could not now be created under the Investment Company Act. The Act itself does not require the liquidation or reorganization of existing investment companies which do not conform to the new statutory standards. But when a court of equity has exercised its jurisdiction to appoint receivers of an investment company pursuant to a complaint charging gross abuse of trust on the part of the trustees or officers, we deem it proper for the court, in determining what would be the appropriate remedy in order to afford complete relief, to take account of the fact that the capital structure is not in conformity with the standards and safeguards which Congress has now written into law. That fact, in conjunction with the other facts in the case, may well render it fair and equitable to require the liquidation of the company in the absence of an acceptable plan of reorganization.

No dissenting voice to the order of liquidation has arisen from the debenture holders who have the greater equity and whose interests the court was originally called upon to protect. It would seem that, if appellants are intent upon investing in an investment corporation or trust, they could form a new one and even solicit the present debenture holders for subscriptions. But it would be inequitable to allow them to force those with burnt fingers to remain investors in an enterprise of proven questionable value.

In view of the above considerations, we find it impossible to say that the order of liquidation was an improper exercise of equitable discretion but rather indicated a court of equity doing equity. Cf. Hornstein, supra, at page 225.

84

■ The appellants urge that the district court committed error in denying their motion for permission to call a meeting of the shareholders of Aldred. Authority seems to support the proposition that despite pendency of bankruptcy proceedings or equity receivership, meetings of shareholders should be permitted. See In re Bush Terminal Co., 2 Cir., 1935, 78 F.2d 662; In re J. P. Linahan Inc., 2 Cir., 1940, 111 F.2d 590. However, the right to hold such a meeting is not absolute and the Circuit Court of Appeals for the Second Circuit has approved deferment of shareholders' meetings where the district court had for sound reasons so exercised its discretion. See In re Public Service Holding Corp., 2 Cir., 1944, 141 F.2d 425; Graselli Chemical Co. v. Aetna Explosives Co., 2 Cir., 1918, 252 F. 456. Judge Learned Hand, however, in Manhattan Rubber Mfg. Co. v. Lucey Mfg. Co., 2 Cir., 1925, 5 F. 2d 39 intimated doubt as to the breadth of the Graselli decision and limited the authority of that case to its own peculiar facts. But any error that the district court may have committed by not granting the motion when made (the motion was under advisement from March 28, 1946 until May 8, 1946) has been rendered moot by the decree ordering liquidation. Since the receivers have already liquidated substantially all the assets nothing further need be done except to make distribution. Furthermore, if there was error it was harmless error inasmuch as appellants owned over 50 per cent of the voting shares, and were actively engaged in presenting their views to the court. No question of non-representation therefore appears. Since the receivers were charged with management, any elected trustees would be mere figureheads. We also agree that prior to court approval of the plans of reorganization there was no necessity for calling a shareholders' meeting to consider them. Consequently, the denial of appellants' motion at the time liquidation was ordered, being based on the futility of any shareholders' action, meets with our approval.

■ Nor can we say that the district court abused its discretion in finding that the plans of reorganization, including appellants', were not "fair and feasible". The Securities and Exchange Commission opposed all plans and each proponent opposed all but his own plan. The statements at the June 10, 1946 proceedings indicate substantial reason for the non-acceptance by the court of any of the projected plans. And, the possibility of mutually acceptable plans which could be approved by the Commission seemed remote. As there was no satisfactory plan of reorganization assuring adequate protection to the debenture holders, the court properly rejected a return of control to the holders of the "free stock" and ordered liquidation.

The decision of the District Court is affirmed and the case is remanded to that court for further proceedings in accord with this opinion.